**MEDTRONIC, INC., Plaintiff,**

v.

**MEDICAL DESIGN RESEARCH, INC.,
et al., Defendants.**

**Civ. A. No. CV 75–1023–AAH.**

United States District Court,
C. D. California.

July 28, 1975.

Beehler, Mockabee, Arant, Jagger & Bachand, Los Angeles, Cal., for plaintiff.

Milton Linder, Los Angeles, Cal., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER RE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

HAUK, District Judge.

This cause having come on for hearing before this Court on the 14th of July, 1975, on Plaintiff's Motion For Preliminary Injunction, and the Court having considered the papers filed herein and the arguments of counsel, and the Court having granted plaintiff's Motion for good cause shown, finds the facts to be and states the conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, as set forth below:

These Findings of Fact and Conclusions of Law are entered only for the purpose of, and in connection with, the aforesaid Motion For Preliminary Injunction. They are based only on the evidence now before the Court and are entered without prejudice to the same contentions being urged by the parties on a Motion to Dissolve or at the trial of the action, and are not final adjudications.

### FINDINGS OF FACT
### PARTIES

#### 1

Plaintiff is a corporation organized and existing under the laws of the State of Minnesota and has its principal place of business at 3055 Old Highway Eight, Minneapolis, Minnesota 55418.

#### 2

Defendant, Medical Design Research, Inc. is a corporation organized and existing under the laws of the State of California and has its principal place of business at 24521 Chamalea Drive, Mission Viejo, Orange County, California.

#### 3

Defendant, Ronald D. Deahr, is an individual, a citizen of the State of California and resides at 24521 Chamalea Drive, Mission Viejo, California.

#### 4

Defendant, William E. Maxey, is an individual, a citizen of the State of California and resides at 858 45th Avenue, San Francisco, California.

#### 5

### PLAINTIFF'S BUSINESS AND CUSTOMER LIST

Since 1949, plaintiff and its predecessors have engaged in the invention, development, investigation, production and marketing of innovative and sophisticated medical electronic devices which are implanted in or applied to humans to rectify pathological conditions. Plaintiff has pioneered and is today the largest producer of implantable artificial cardiac pacemakers. In the last few years plaintiff has marketed chemical cell powered implantable and topical neurological stimulators for amelioration of pain locally and temporarily. Plaintiff's neurostimulators, trademarked NEUROMOD, are sold ethically only on prescription of a physician.

#### 6

In biomedical engineering terms, a nerve stimulator, such as the Medtronic NEUROMOD device, by a carefully controlled and specifically locally applied electrical current stimulates certain of the nerve fibers in the body namely the sensory nerves, in a manner effecting a sensed soothing of pain and without undesirable effects of "burning" or motor nerve spasms.

#### 7

The Medtronic, Inc. approach to the market has been carefully limited to only certain doctors and early users have been screened for appropriateness in order that the product have a solid performance record before generally being made available. Plaintiff's approach to the market on a highly selective ethical basis has resulted in only certain doctors being contacted and even fewer doctors being actively engaged in the explora-

tion of the feasibility of nerve stimulation by the NEUROMOD device for the relief of pain. Plaintiff, Medtronic, Inc., has sponsored establishment and operation of Study Groups of selected physicians whose efforts with NEUROMOD neurostimulator devices have been given maximum technical support and whose results have been carefully monitored to develop a base of information from which sales of NEUROMOD devices could someday be extended more generally.

8

Medtronic, Inc. has expended in excess of $1.5 million in advertising, promotion, salesmen's salaries, bonuses and expense and like sales support activities since the introduction of the NEUROMOD units about three years ago.

9

In the course of this limited market activity, plaintiff Medtronic, Inc. hired a number of market development specialists whose job it was to introduce the product in a select way and work with the doctors to define the use range of the new neurostimulator devices.

10

Defendant Deahr was employed by plaintiff from January 15, 1968 to May 16, 1974. Defendant Maxey was employed by plaintiff from June 18, 1973 to January 31, 1975. Defendants Deahr and Maxey were employed as market development specialists. As such these men were given names of customers and potential customers and sales support, substantial salaries, bonuses and expense accounts to enable them to find other and additional doctors among the specialties of neurosurgery, physical therapy and orthopedics who would be willing to prescribe this new mode of pain relief for their patients.

11

Neither Deahr nor Maxey was familiar with NEUROMOD or competitive neurostimulator devices nor doctors using or prescribing such devices at the time of their employment by Medtronic, Inc.

12

Deahr and Maxey were directed to and did work toward and create for plaintiff, Medtronic, Inc., a list of particular doctor-customers out of the thousands of potential doctor customers who were willing and ready to use on and prescribe for their patients NEUROMOD neurostimulator devices.

13

The duties of both Deahr and Maxey were not merely to obtain sales of NEUROMOD neurostimulator devices. Their duties were to create a market for plaintiff's neurostimulator devices by a gradual and deliberate, ethical introduction of these devices to selected members of the Medical profession. For this purpose, during their respective periods of employment, defendants Deahr and Maxey were virtually the sole medical marketing specialists for NEUROMOD neurostimulation products in the portion of the United States extending from Washington to Arizona and from Colorado to California.

14

Defendants Deahr and Maxey were highly successful in generating a list of doctor customers for plaintiff although such doctors actually using these devices represent only a tiny fraction of the specialists who theoretically at least are potentially customers for such devices.

15

The defendants in their Answer admit that only a relatively few practitioners out of the thousands of practicing physicians in the applicable specialties of neurosurgery, orthopedics and physical therapy are customers for or will prescribe devices of the neurostimulation type.

**16**

Sales of neurostimulation devices are determined by a physician. In fact few physicians actually do prescribe these devices, since the product has not long been available and the existing physician customers of plaintiff Medtronics, Inc. are in large measure unknown as prescribers of neurostimulation devices to those outside Medtronic's employ. Many, if not most physicians, are reluctant to try these devices for their patients until further passage of time and as a result only a relatively few doctors in the affected specialties: neurosurgery, orthopedics and physical therapy, have been found willing and these through face-to-face interviewing and on-patient demonstrations, to prescribe the NEUROMOD device on a recurring basis for their patients suffering chronic pain.

**17**

By reason of an exclusive market territory given them and solely on account of their employment by plaintiff, defendants Deahr and Maxey became intimately familiar with plaintiff's physician customers, their requirements, plaintiff's business products and business practices, in the Western United States and particularly with those relatively few medical doctors experienced in actually prescribing neurostimulation products for their patients, and all other information necessary for the ethical distribution of plaintiff's neurostimulation products.

**18**

Appendix A accompanying the Motion for Preliminary Injunction contains the names of the few doctor customers successfully called upon by defendants Deahr and/or Maxey during the course of their employment with plaintiff Medtronic Inc. in a sales or marketing capacity, to place with the doctor plaintiff's NEUROMOD neurostimulator devices, and to assist in the proper application of such devices to particular patients.

**19**

Plaintiff's list of these prescribing doctors—customers (Appendix A) for the NEUROMOD device has been built laboriously at great cost in terms of money and time. There is today no listing of doctors which enables discrimination between doctors who do and doctors who do not prescribe these nerve stimulation devices. Each doctor on a known published list e.g., of neurosurgeons, must be individually contacted unless a salesman has knowledge of that doctor's record for prescribing neurostimulation devices separate and apart from the published lists of memberships in certain specialized medical societies or lists of attendees at conventions and convocations of doctor specialists, which lists run into thousands and thousands of names.

**20**

The knowledge of the identity of physician customers of plaintiff and particularly such physician customer's usages and practices used by defendants Deahr and Maxey is a confidential trade secret of plaintiff, was acquired from plaintiff while in the employ of plaintiff, was acquired solely by reason of the position of trust and confidence defendants Deahr and Maxey enjoyed while in plaintiff's employ, and was generated by or made available to defendants Deahr and Maxey for their use exclusively for the benefit of plaintiff in discharging their responsibilities as key personnel in the neurostimulator product marketing operations of plaintiff.

**21**

## DEFENDANTS' COMPETITIVE ACTIVITIES

In May, 1974, Defendant Deahr operated a sole proprietorship and defendant Deahr did cause there to be established defendant Medical Design Research, Inc., with himself initially as sole stockholder.

On or about January 31, 1975 defendant Maxey terminated his employment with plaintiff and thereupon on or about February 3, 1975 took up a sales position with defendant Deahr and Deahr's company, defendant Medical Design Research, Inc.

Defendants Medical Design Research, Inc., Ronald D. Deahr and William E. Maxey and each of them are manufacturer's representatives selling, supplying and offering for sale neurostimulator devices manufactured by competitors of plaintiff to wit: Medical Devices, Inc. (Neuropac I and Neuropac II devices) and Avery Laboratories Inc. neurostimulator devices.

The neurostimulator devices of Medical Devices, Inc. and Avery Laboratories Inc. being sold by defendants are competitive with the neurostimulator devices manufactured by plaintiff Medtronic, Inc. and sales of such competitive devices by defendants are at the expense of plaintiff Medtronic's sales of their NEUROMOD neurostimulator device.

The Medical Devices' "Neuropac I" and "Neuropac II" neurostimulators are directed at relief of the same pain symptoms in the same patients as the plaintiff Medtronic Inc. NEUROMOD device and thus are identical in function and so alike in their utility to patients to the Medtronic NEUROMOD device that no patient is likely to want to have both a Medtronic NEUROMOD device and a Medical Devices "Neuropac" device since they are functionally redundant.

Even a cursory comparison of the respective sales brochures (attached to the Maurer affidavit) of plaintiff Medtronic, Inc. and of Medical Devices Inc. represented by defendants, reveals that the products being described there are useful to the same patients for the selfsame conditions.

Defendants' sales records (Exhibit 9 to the Motion For Preliminary Injunction) reveal that the most frequently recurring doctors' names are those of customers of Medtronic, earlier called upon and sold by defendants Maxey and Deahr, on behalf of plaintiff Medtronic, Inc.

Defendants Deahr and Maxey have approached numerous of the best of plaintiff's doctor-customers, those on whom these defendants had been calling regularly on behalf of plaintiff, and the most substantial prescribers of plaintiff's neurostimulation products, and have diverted and presently continue to divert such doctor's trade and custom from plaintiff, and to themselves and plaintiff's competitors.

Plaintiff's customer list is a trade secret of great value to plaintiff and plaintiff has a property right therein. The defendants have used and are using plaintiff's customer list for sale and/or rental of neurostimulators in competition with plaintiff.

Defendants Medical Design Research, Inc. and Ronald D. Deahr solicited for employment and hired and presently employ William E. Maxey in an employment competitive with plaintiff and within one year of the termination of defendant Maxey's employment with plaintiff.

Defendant Maxey entered into a written employment agreement with plaintiff providing in material part "(k) For 360 days after my employment I will not attempt to divert any Company business

by influencing customers with whom I or my subordinates were connected the last year of my employment." Defendant Maxey's hiring and continued employment by defendants Medical Design Research, Inc. and Ronald D. Deahr has induced Maxey to breach his employment agreement and Maxey is in breach of said agreement.

32

The corporate defendant Medical Design Research, Inc. as of its most recent financial statement (May 30, 1975) had only $650.87 in its checking account, a total capital including retained earnings of $12,427.25 and current liabilities of $10,535.17. The individual defendants have not produced any evidence that they have any greater financial capability than the corporate defendant. Defendants may not be able to respond in damages if defendants are found liable in damages at the trial for their sale and rental of competitive neurostimulator devices to the customers of plaintiff in place and instead of the neurostimulator devices of plaintiff. Thus, plaintiff will suffer irreparable injury if defendants continue, pending the trial of the action, to promote and sell or rent the neurostimulator devices of plaintiff's competitors to plaintiff's customers.

33

Defendants have disclosed and are disclosing to plaintiff's competitors the names of certain of the doctor customers of plaintiff for neurostimulator devices by obtaining and transmitting orders for such devices to competitors of plaintiff.

34

Any finding of fact herein which may properly be construed in whole or in part as a conclusion of law shall be so deemed and treated as if set forth under the following Conclusions of Law.

CONCLUSIONS OF LAW

A

This Court has jurisdiction over the parties and over the subject matter of the Complaint, and venue is proper.

B

Plaintiff's customer list, Appendix A attached to the Motion For Preliminary Injunction, is confidential, and the trade secret property of plaintiff and of value to plaintiff.

C

Defendants Medical Design Research, Inc., Ronald D. Deahr and William E. Maxey have used and continue to use the plaintiff's said customer list learned during the course of their employment with plaintiff in competition with plaintiff in the sale or rental of neurostimulator devices and are thereby competing unfairly with plaintiff.

D

The Maxey employment contract provision (k), against attempting for 360 days after termination of his employment with Medtronic to divert any business by influencing customers with whom defendant Maxey or his subordinates were connected, the last year of his employment, is good and valid in law, and has been breached by defendant Maxey and said breach was induced by defendants Medical Design Research, Inc. and Ronald D. Deahr.

E

Plaintiffs are entitled to a preliminary injunction enjoining and restraining the defendants Ronald D. Deahr, William E. Maxey and Medical Design Research, Inc. and each of them, their officers, directors, employees, agents, servants and attorneys, and all persons in active concert or participation with them who receive actual notice of the order by personal service of otherwise, from:

1. Contacting, responding to contacts from, serving, supplying or soliciting for

sale or rental in competition with Medtronic, Inc. of chemical cell powered neurostimulators to wit:

Neuropac I

Neuropac II

of Medical Devices Inc., and/or the neurostimulator products of Avery Laboratories, Inc., the doctors listed in Appendix A hereto, either directly, or indirectly, through such doctors' patients, agents, employees or wholly-owned health care organizations; including E & E Laboratories and Southwest Pain Center;

2. Obtaining or transmitting orders for said chemical cell powered neurostimulators upon prescription of any doctor listed in Appendix A hereto;

3. Seeking or accepting commissions or other compensation on account of the sale of said chemical cell powered neurostimulator to a doctor listed in Appendix A hereto;

4. Using, maintaining or copying lists of customers of plaintiff whose identity was learned by either individual defendant in the course of his employment with plaintiff, or from customer lists obtained from plaintiff;

5. Hiring, employing or soliciting for employment competitive with plaintiff any employee of plaintiff during such employee's period of employment by plaintiff or within one year of such employee's termination of employment with plaintiff;

6. Breaching or inducing others to breach their respective contracts of employment with plaintiff;

7. Disclosing, distributing or disseminating to Medical Devices, Inc., Avery Laboratories, Inc. or any other supplier of neurostimulator devices represented by any defendant herein, the identity of the doctors listed in Exhibit A hereto.

F

Any Conclusion of Law herein which may be properly construed in whole or in part as a Finding of Fact shall be so deemed and treated as if set forth under the Findings of Fact above.

On the basis of the foregoing, it is ordered that the aforesaid Motion For Preliminary Injunction is granted.

ORDER

It is ordered, adjudged and decreed

Forthwith and immediately as of 12 Noon, July 14, 1975, the defendants Ronald D. Deahr, William E. Maxey, and Medical Design Research, Inc., and each of them, their officers, directors, employees, agents, servants and attorneys, and all persons in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are enjoined and restrained from:

1. Contacting, responding to contacts from, serving, supplying or soliciting for sale or rental in competition with Medtronic, Inc. of chemical cell powered neurostimulators to wit:

Neuropac I

Neuropac II

of Medical Devices, Inc., and/or the neurostimulator products of Avery Laboratories, Inc., the doctors listed in Appendix A hereto, either directly, or indirectly, through such doctors' patients, agents, employees or wholly-owned health care organizations; including E & E Laboratories and Southwest Pain Center;

2. Obtaining or transmitting orders for said chemical cell powered neurostimulators upon prescription of any doctor listed in Appendix A hereto;

3. Seeking or accepting commissions or other compensation on account of the sale of said chemical cell powered neurostimulator to a doctor listed in Appendix A hereto;

4. Using, maintaining or copying lists of customers of plaintiff whose identity was learned by either individual defendant in the course of his employment with plaintiff, or from customer lists obtained from plaintiff;

5. Hiring, employing or soliciting for employment competitive with plaintiff any employee of plaintiff during such employee's period of employment by plaintiff or within one year of such employee's termination of employment with plaintiff;

6. Breaching or inducing others to breach their respective contracts of employment with plaintiff;

7. Disclosing, distributing or disseminating to Medical Devices, Inc., Avery Laboratories, Inc. or any other supplier of neurostimulator devices represented by any defendant herein, the identity of the doctors listed in Exhibit A hereto.

## II

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure the plaintiffs herein shall give security in the sum of $25,000, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.